862                    February 4, 2026                    No. 69

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Kelli KLEIN,
*Plaintiff-Respondent,*

*v.*

Helene BISNAIRE,
Richard Ziff, and all others,
*Defendants-Appellants.*

Josephine County Circuit Court
23LT21245; A183228 (Control)

Richard W. ZIFF
and Helene M. Bisnaire,
*Plaintiffs-Appellants,*

*v.*

Kelli KLEIN,
*Defendant-Respondent.*

Josephine County Circuit Court
23CV52063; A183376

Pat Wolke, Judge.

Argued and submitted December 5, 2025.

Richard W. Ziff argued the cause and filed the brief, *pro se.*

Michael Stout argued the cause for respondent. Also on the brief was Stout Law LLC.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

This consolidated appeal arises from disputes regarding land occupancy and ownership of a property in Josephine County. Because the parties were each plaintiff in one action and defendant in another, we refer to the appellants as "occupants," the respondent as "buyer," and the prior owners of the property—who provided testimony—as "the sellers." The property has two homes on it as well as a barn; occupants live in one home and buyer lives in the other.[1] Occupants also operate a business, and buyer was employed by the business. The parties initiated separate actions against one another in the same month; occupants filed a complaint against buyer seeking relief for *quantum meruit*, quiet title, partition of the property and specific performance of a real estate agreement; buyer initiated a forcible entry and detainer (FED) action against occupants. The cases were consolidated, and buyer prevailed. For the reasons provided below, we affirm.

OCCUPANTS' POSITION

Occupants, who have lived on the property for more than 12 years, alleged that they "had a lease option contract with the first right of refusal" with the sellers. They alleged that their agreement with the sellers included that any enhancements and improvements made by occupants to the property over the years that they lived on the land "would provide credit towards the purchase price of the property * * *." When the sellers were ready to sell the property, occupants did not have the financial capacity to purchase the property outright and "an agreement was made with the [buyer] to help her purchase the property." Occupants alleged that the agreement involved occupants helping buyer with the down payment; buyer paid $384,000 for the down payment; buyer and occupants would each "pay one-half of the mortgage, property taxes, and insurance monthly as well as one-half of that down payment over a period of time—minus $50,000.00, for a total of $142,000.00." From those allegations, we understand occupants' argument to be that once their contributions totaled $142,000, they would have a one-half undivided interest in the property and a tenancy in common agreement with

---

[1] The appellant-occupants appear *pro se* on appeal; they were represented by counsel for the trial court proceedings.

buyer, and both parties would continue to pay one-half of the monthly mortgage. Occupants also alleged that buyer agreed to deed (through a quitclaim deed) a portion of the ownership rights to occupants each year.

Occupants alleged they complied fully with those terms and at the time of filing their complaint, had paid their portion of the mortgage each month for a total of $41,210.16 and had also made two $10,000 payments directly to buyer. Occupants also alleged that they were entitled to one-third of rental income for a barn on the property. They argue that through a combination of the payments they have made, the barn rental income they are owed, their assistance with closing costs, and their investment in repairs to the property, they have paid $77,782.16 towards their portion of the down payment and owe $64,217.84. They also claim that they have made improvements to the property throughout their occupancy that have unjustly enriched buyer—occupants argue that buyer benefited from a $100,000 property sale price discount.

Occupants alleged they are entitled to specific performance of their agreement and should be granted a one-half interest in the property once their remaining balance is paid. In the alternative, occupants sought partition of the property through a refereed private sale.

On appeal, occupants argue that "[t]he trial court erred by failing to properly value and consider [their] financial contributions and improvements to the land which granted [occupants] an ownership interest in the land." Occupants further argue that fairness and justice necessitate an outcome in their favor. Occupants also argue that if buyer maintains sole ownership of the property, occupants need to be repaid for mortgage payments and compensated for their investments in the property and their loss of the benefit of the bargain.

## BUYER'S POSITION

Buyer purchased the property by signing a purchase agreement with the sellers. Buyer paid $1.1 million for the property, consistent with the full appraisal value. Buyer alleged that the sellers did not agree to give buyer a

credit or price drop due to alleged work done by occupants on the property. The deed listed only buyer as the owner. The deed of trust to secure the mortgage listed only buyer. Buyer alleged that occupants did not pay any closing costs at the time buyer purchased the property. Buyer and occupants discussed various possibilities of occupants buying into ownership of the property, but neither a tenancy in common nor sale agreement was ever finalized.

Buyer eventually issued a 90-day termination notice because she "needed to move into the house" that occupants were and are living in because of a medical condition and space needed for her family. Buyer brought an action for possession and prevailed.

On appeal, buyer argues that the trial court's factual finding that a landlord-tenant relationship existed between buyer and occupants is supported by evidence in the record. She also argues that the trial court's legal conclusion that there was no agreement for joint ownership is correct, because there cannot be such an oral agreement for an interest in real property. Buyer argues that occupants "cannot even meet the initial threshold" to establish an exception to the statute of frauds and did not do so at trial or on appeal.

### THE TRIAL COURT'S RULING AND REASONING

After a one-day trial, the trial court determined that buyer's allegation that she needed occupants to move out because of her health condition and needs for her family had not been rebutted. The trial court also found that "there [was] no meeting of the minds whatsoever as to the terms of the case, so the contract cannot be specifically enforced." The court determined that the monthly payments made by occupants could easily be referred to as fair rental payments in the context of a landlord-tenant agreement and thus could not be used to establish partial performance of a sale contract. The court determined that of the two $10,000 payments, one payment can be referred to as wages paid to buyer for the work she performed for occupants' business and the other was returned by buyer to occupants.

The trial court determined that no unjust enrichment accrued to buyer due to property improvements—because any such improvements happened while the property was owned by the sellers and buyer paid the full purchase price. The trial court ordered eviction of occupants. Occupants sought a stay, which was granted pending this appeal.

## ANALYSIS

"We review the trial court's findings of fact for any evidence to support them and its legal conclusions for errors of law." *Irvin Petersen Trucking, LLC v. Scala*, 342 Or App 221, 223, 576 P3d 517 (2025) (internal quotation marks and ellipsis omitted). Oregon's statute of frauds requires that agreements for the sale of or interest in real property must be in writing, unless an exception applies. *Brice v. Hrdlicka*, 227 Or App 460, 465, 206 P3d 265 (2009). "The doctrine of par[tial] performance is one such exception." *Id.* Under the doctrine of partial performance, if three requirements are met, an otherwise unenforceable agreement may be enforced by a court. *Id.* "[S]pecific performance in such cases is not a matter of right. It is granted only in the exercise of sound judicial discretion." *Tigglebeck v. Russell et al.*, 187 Or 554, 564, 213 P2d 156 (1949).

> "First, the party asserting part[ial] performance must provide preponderating evidence of an agreement that is clear, certain and unambiguous in its terms. Second, there must be evidence of conduct unequivocally and exclusively referable to the contract. Finally, there must be equitable grounds for enforcing the agreement, such as facts justifying the avoidance of unjust enrichment or relief from fraud."

*Brice*, 227 Or App at 465-66 (internal quotation marks and citation omitted). "Whether a plaintiff partially performed an agreement so as to remove it from the statute of frauds is a question of fact." *Id.* at 466.

In order to prevail, occupants had the burden of proof to establish that there was a property sale and tenancy in common agreement between occupants and buyer with "clear, certain and unambiguous" terms. *Id.* at 465. If there is any evidence in the record to support the trial court's determination that the parties failed to reach a meeting of the minds,

we must affirm pursuant to our standard of review. *Irvin Petersen Trucking*, 342 Or App at 223. Although the record does include testimony by occupants that they reached specific terms of an agreement during a roughly two-hour meeting with buyer, testimony by another witness indicates that that meeting "was sort of the discovery process" and that definite terms were not settled during that meeting. There is some testimony that there were writings based on discussions about the agreement, but no such writings were offered into evidence.

In other words, there was evidence to support the trial court's finding that there was no agreement between occupants and buyer with "clear, certain and unambiguous" terms. There is conflicting evidence about whether the sellers discounted the purchase price by $50,000, by $100,000, or not at all. There is conflicting testimony from occupants about whether they had to come up with money to pay back their portion of a $384,000 or $388,000 downpayment and occupants themselves appear to be unsure of whether there was some other $30,000 or $50,000 credit. Furthermore, the evidentiary record includes unsigned tenancy in common documents and emails or letters between occupants, buyer, and attorneys about the *possibility* of executing a land sale contract and a tenancy in common contract. That evidence permitted a determination by the trial court that the parties discussed but did not have mutual agreement about the property ownership.

Further, any argument that buyer has been unjustly enriched by financial contributions from occupants fails as a legal matter, given the findings made by the trial court. The trial court determined that the payments occupants made to buyer were not "unequivocally and exclusively" for any such land sale or tenancy in common agreement, because those payments could plausibly refer to rental and wage payments, or money returned to occupants from buyer. *Brice*, 227 Or App at 466 (internal quotation marks omitted).

Further, the evidence supports the trial court's determination that buyer paid the fair market appraised value for the property. Despite testimony from the sellers that had they sold the property on the open market, they

intended to ask for $1.2 million and that they offered the property to buyer at $1.1 million based on the sellers' belief that buyer intended to include occupants in ownership of the property, evidence supported the trial court's finding. The appraisal documents show that the property was appraised at $1.1 million, which is the price that buyer paid. Additionally, any argument about unjust enrichment as a result of improvements made by occupants necessarily fails, because the record permits a finding that occupants did not establish that buyer knew about or agreed to be party to any agreements between occupants and the sellers.

In conclusion, the record supports the trial court's determination that occupants and buyer had a landlord-tenant relationship, that buyer needed to move into the main home, and that buyer was entitled to an enforceable eviction notice. The record supports the trial court's determinations that buyer was not unjustly enriched; and that occupants did not meet their burden to establish the existence of an ownership contract regarding the property and are not entitled to specific performance, quiet title, or partition of the property.

Affirmed.